JAMES MORRISON *vs.* THOS. N. OIUM.

Opinion filed Nov. 17th, 1892.

**Sale—Transfer of Possession.**

> When, at or prior to the time of the execution of a bill of sale of personal property, the vendor, with intent to transfer the title and possession of the same, pointed it out to the agent of the vendee, where it was contained in boxes and crates, and stood in a warehouse, and subsequently locked the building, and delivered the key to such agent, who thereafter retained it, there was such an immediate delivery and actual and continued change of possession as fulfills the requirements of § 4657, Comp. Laws.

**Joint Possession of Building Where Stored.**

> Such delivery is not impaired by the fact that a third party may also have had property in the same warehouse, and held a key thereto; nor by the further fact that the vendor may have agreed with such third party that his possession should be exclusive.

Appeal from District Court, Ransom County; *Lauder* J.

Action for the possession of personal property by James Morrison against Thomas Oium, sheriff. Plaintiff had judgment, and defendant appeals.

Affirmed.

*Goodwin, Van Pelt* and *Gammons,* for appellant.

A transfer of personal property, if not accompanied by an immediate delivery, and followed by an actual and continued change of possession is conclusively presumed to be fraudulent, § 2024 Civil Code, *Conrad* v. *Smith,* (N. D.) 51 N. W. Rep. 720; *Longley* v. *Daly,* (S. D.) 46 N. W. Rep. 247; *Cook* v. *Rochford,* 12 Pac. Rep. 568; *Young* v. *Poole,* 13 Pac. Rep. 492; *Comatia* v. *Kyle,* 5 Pac. Rep. 666; *Stull* v. *Weigle,* 8 At. Rep. 578; *Batcher* v. *Berry* 13 Pac. Rep. 45; *Sweeney* v. *Coe,* 21 Pac. Rep. 705; *Murch* v. *Swenson,* 42 N. W. Rep. 290. If there is a doubt as to the sufficiency of the delivery the benefit of the doubt must be given to the creditor. *Anderson* v. *Brennerman* 6 N. W. Rep. 222; *Smith* v. *Greenop,* 26 N. W. Rep. 332.

*C. W. Buttz,* for respondent.

The delivery of a bill of sale and of the key to a warehouse in which the goods are stored is an immediate delivery of the goods. Teidman on Sales, 106; *Bruns* v. *Hatch,* 19 Pac. Rep. 482; *Pearson* v. *Quist,* 44 N. W. Rep. 217; *Ross* v. *Sedgwick,* 69 Cal. 247; *Pope* v. *Cheney,* 68 Ia. 363; *Hart* v. *Mead,* 84 Cal. 244. Slight evidence of actual delivery has been allowed to protect the rights of the purchaser, 8 Am. and Eng. Enc. Law 885, *Russel* v. *O'Brien,* 127 Mass. 349; *Thomdye* v. *Bush,* 114 Mass. 116; *Ingalls* v. *Herrick,* 108 Mass. 351.

BARTHOLOMEW, J. Plaintiff and respondent claims certain personal property as vendee. Defendant and appellant, as sheriff, claims possession of the same by virtue of an attachment against the property of respondent's vendor's. Respondent, in his complaint, claimed title through a bill of sale executed and delivered on November 9th, 1887. At the hearing, against appellant's objections, respondent was permitted to give evidence of an oral contract of sale made at an earlier date, and delivery of possession thereunder. This is assigned as error. If so, it is without prejudice. It is undisputed that a bill of sale was executed and delivered on November 9th, and that the attachment was not served until November 10th, and the same delivery of the property that was made under the oral contract of sale continued under the written bill of sale. If the prior delivery was good, no further delivery was required. *Shurtleff* v. *Willard,* 19 Pick. 210; *Lake* v. *Morris,* 30 Conn. 201. At the close of the testimony, appellant requested the court to take the case from the jury, and direct a verdict in his favor. This the court refused to do, but directed a verdict in respondent's favor. The case turned upon the question of delivery, and the court ruled that, under the undisputed facts, there was a legal delivery. This is alleged as error, and to that point appellant's main argument is directed. The property in controversy consisted of buggies in what the witnesses call a "knock down" condition, meaning that the various parts were in the boxes and crates in which such property is usually shipped. The delivery consisted in taking respondent's

agent into the warehouse where the property was stored, showing it to him, and locking the warehouse, and giving him the key. A question of evidence arises at this point also. In the warehouse where the buggies were stored was a large amount of other property, (farm machinery principally,) which had formerly belonged to respondent's vendors, and which they had, a few days prior, transferred to one of their creditors, and had also given to such creditor a key to the warehouse. Appellant offered to prove that, by agreement between the vendors and such creditor, the creditor was to have exclusive control of the warehouse after the key was delivered to him. This evidence the court excluded, and, we think, properly. If such agreement had in fact been made and carried out, and if such creditor had exclusive control of and access to said warehouse, holding the property therein that had not been conveyed to him simply as a gratuitous bailee for the owners, it may be that upon a subsequent sale of such property by the owners, no delivery that would be good as against existing creditors could be made without notice to such bailee, and his consent either to relinquish to the purchaser or to hold as his bailee. Some of the cases would seem to so hold. See *Hildreth* v. *Fitts*, 53 Vt. 684; *Hallgarten* v. *Oldham*, 135 Mass. 1; *Campbell* v. *Hamilton*, 68 Iowa, 293, 19 N. W. Rep. 220. But it is unquestioned in this case that respondent's vendors did have access to the warehouse, and had possession of a key thereto, and unlocked the warehouse, and pointed out the property in controversy to respondent's agent, and subsequently locked the building, and gave such agent the key. Nor is it questioned that at the same time the agent of the party to whom the farm machinery had been sold held a key to the building, and had access thereto. If respondent's vendor were violating any agreement in not allowing said party exclusive possession, that fact cannot affect appellant's legal rights. If under the circumstances, the acts of respondent's vendors amounted to a legal delivery, they were none the less a delivery because such vendors, at a prior time, had made an agreement, which they had failed to perform, that

another party might have exclusive control of the building; hence the existence or nonexistence of such an agreement was entirely immaterial in the case, and the offered evidence was properly excluded.

Section 4657, Comp. Laws, reads as follows: "Every transfer of personal property, other than a thing in action, or a ship or cargo at sea or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer." It is claimed that there was no such immediate delivery and actual and continued change of possession in this case as the statute contemplates. It will be noticed that under our statue the failure to comply with its terms raises a conclusive presumption of fraud. Under statutes of this character it is perhaps true that somewhat higher evidence of delivery is required than under statutes where the fraudulent presumption raised by the law may be rebutted. *Ludwig* v. *Fuller*, 17 Me. 162. The delivery in this case was symbolical, as distinguished from actual, (which takes place when there is manual tradition of the property from vendor to vendee,) or con- structive, (which is effected by bill of sale when the property is not present, as a ship at sea, or by the parties approaching within view of the property, and the vendor proclaiming delivery to the vendee when the property is ponderous to a degree that precludes actual delivery.) But the symbolical delivery that is manifested when the vendor delivers to the vendee the key to the building where the property is stored has long been regarded

by the law as equally effective in transferring the title and possession from the vendor to the vendee with actual tradition.    What the law requires, and all that the law requires, is that the conduct of the parties should clearly show a relinquishment of ownership and possession, and all rights of control on the part of the vendor, and an assumption of ownership and possession and control on the part of the vendee.    We think these requirements were fully met by the conduct of the parties in this case, as shown by the undisputed testimony.    There is not even a suspicion in the testimony that respondent's vendors, after delivery of the key of the warehouse to respondent's agent, ever exercised any control whatever, real or apparent, over the property.    Nor is there any indication that there was aught about the warehouse that would lead any one to suppose that it was in the possession of such vendors, or that they were in any manner carrying on their business therein.    Nor does any reason occur to us why this delivery should be defeated because a third party had property in the same warehouse, and held a key thereto.    After the delivery of the key to the agent, respondent's vendors ceased to have access to the building or control of any property therein.    Prior to that time they did have access to and actual possession of the property sold to respondent.    By their acts they transferred all their right of access, and their possession, to respondent.    The vendors' rights and possession could not have been more completely terminated had they, therefore, been sole occupants of the building.    We think the trial court rightly held as matter of law that the undisputed evidence showed an immediate delivery, and actual and continued change of possession, good as against existing creditors of the vendors.    See, generally, *Packard* v. *Dunsmore*, 11 Cush. 282; *Russell* v. *O'Brien*, 127 Mass. 349; *Vining* v. *Gilbreth*, 39 Me. 496; *McKee* v. *Garcelon*, 60 Me. 165; *Benford* v. *Schell*, 55 Pa. St. 393.

What we have said virtually disposes of the error assigned upon the refusal of the court to grant a new trial on the ground of newly-discovered evidence.    This proposed evidence is all directed

to the points which we have already ruled to be immaterial in this case.

The judgment of the District Court is affirmed. All concur.